1

1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - -X
3  SECURITIES AND EXCHANGE        : 17-CV-7007 (CBA)
   COMMISSION,                    :
4                                 :
                                  :
            Plaintiff,            :
5                                 :
                                  :
         -against-                :
6                                 : United States Courthouse
   PLEXCORPS (a/k/a and d/b/a     : Brooklyn, New York
7  PLEXCOIN and SIDEPAY.CA),      :
   DOMINIC LACROIX and SABRINA    :
8  PARADIS-ROYER,                 :
                                  : Tuesday, January 9, 2017
9            Defendants.          : 4:00 p.m.
   - - - - - - - - - - - - - - - -X
10

11       TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
            BEFORE THE HONORABLE CAROL BAGLEY AMON
12            UNITED STATES SENIOR DISTRICT JUDGE

13

14               A P P E A R A N C E S :

15 For the Plaintiff:      UNITED STATES SECURITIES AND
                           EXCHANGE COMMISSION
16                         200 Vesey Street, Suite 400
                           New York, New York 10281
17                         BY:  JORGE G. TENREIRO, ESQ.
                                VALERIE SZCZEPANIK, ESQ.
18
   For the Defendants:     MORRISON COHEN, LLP
19                         909 Third Avenue
                           New York, New York 10022-4784
20                         BY:  JASON GOTTLIEB, ESQ.
                                ALLISON KHASKELIS, ESQ.
21

22 Court Reporter:         DAVID R. ROY, RPR
                           225 Cadman Plaza East
23                         Brooklyn, New York 11201
                           drroyofcr@gmail.com
24
   Proceedings recorded by Stenographic machine shorthand,
25 transcript produced by Computer-Assisted Transcription.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

Proceedings                                2

1              (In open court.)

2              THE COURTROOM CLERK:  Cause Number 17-CV-7007,

3      Securities and Exchange Commission against Plexcorps on for

4      premotion conference.

5              THE COURT:  All right.  The parties want to state

6      their appearances, please.  First the plaintiff.

7              MR. TENREIRO:  Yes, Your Honor, good afternoon.

8      Jorge Tenreiro and with me is Valerie Szczepanik for the

9      Securities and Exchange Commission.

10             THE COURT:  Good afternoon.

11             MR. GOTTLIEB:  Good afternoon, Your Honor.  From

12     Morrison & Cohen, Jason Gottlieb and Allison Khaskelis for

13     the defendants.

14             THE COURT:  Good afternoon.

15             Mr. Gottlieb, do you want to -- your clients want

16     to make their motion to dismiss at this point in time?

17             MR. GOTTLIEB:  Correct, Your Honor.

18             THE COURT:  Doesn't that sort of complicate things

19     with the -- you can be seated, by the way -- with the

20     pending motion for preliminary injunction?  Why don't we

21     just go to that and then resolve -- in that context part of

22     the responsibility of the plaintiffs would be to show that

23     there was clear evidence of personal jurisdiction.  Why

24     don't we just resolve that in conjunction with the hearing

25     preliminary?

Proceedings                                              3

1            MR. GOTTLIEB:  Well, it's a little cart before the

2       horse, Your Honor.  I think that the Court would have the

3       obligation to make sure that there is personal jurisdiction

4       over the defendants and that their claim has been stated per

5       Morrison before going to any kind of discovery like that.

6       If Your Honor is proposing rolling those two points

7       together, that's -- that's something that we hadn't thought

8       about.

9            THE COURT:  It just makes sense, you know, to have

10      all of this draft at one point in time.  I mean, the

11      personal jurisdiction issue has a lot to do with the context

12      and nature of the context which could all be developed at

13      the hearing.

14           MR. GOTTLIEB:  That's true, Your Honor.  But there

15      are a number of other issues that I think would come up

16      during the preliminary injunction hearing.  The kinds of

17      issue that the Commission would be trying to prove,

18      essentially they would be trying to prove the merits of the

19      case or at least enough of the merits of the case that

20      Your Honor would decide whether a preliminary injunction is

21      warranted with the rest of the case.

22           THE COURT:  Right.

23           MR. GOTTLIEB:  But before the defendants are put

24      through the process of having to produce discovery

25      documents --

Proceedings                                    4

1          THE COURT:  Well, you have already been ordered to

2    produce discovery.  The discovery has not been stayed in

3    this case.

4          MR. GOTTLIEB:  Well, I appreciate that,

5    Your Honor.  But I believe that a motion -- we would have to

6    make the motion for -- motion to dismiss, because if there

7    is no personal jurisdiction, then the discovery would be

8    stayed.  And part of the motion that I would be making is to

9    stay the discovery on the preliminary injunction.

10         THE COURT:  Well, that discovery -- there is

11   already a process in place for that discovery, correct?

12         MR. GOTTLIEB:  The --

13         THE COURT:  Dates have already been set.

14         MR. GOTTLIEB:  Dates were set by Your Honor in

15   your original *ex parte* TRO.

16         THE COURT:  Did anyone relieve you of those dates?

17         MR. GOTTLIEB:  No.  Well, Your Honor, what we did

18   was we reached accommodation with the Commission to push out

19   certain of the dates, but that was explicitly subject to any

20   kind of jurisdictional defenses.  So now, Your Honor, we're

21   coming to the Court to make those jurisdictional arguments

22   and say we would like to make the motion to both dismiss and

23   to be relieved from those dates pending the determination of

24   the motion to dismiss.  Because if the Court doesn't have

25   personal jurisdiction, then that discovery is not

Proceedings                                    5

1   appropriate in the first place.

2          THE COURT:  Well, the only thing I would point out

3   to you is that discovery is not stayed at this moment.

4          Have you missed discovery deadlines under whatever

5   agreement that you have reached?

6          MR. GOTTLIEB:  If that is the case, then I believe

7   we probably have, Your Honor.

8          THE COURT:  Well, discovery has not been stayed.

9   I mean, you do not get an automatic stay by filing a motion.

10         MR. GOTTLIEB:  Your Honor, we were seeking to

11  resolve these kinds of issues through this motion.  If that

12  is still there, then all we have -- we have certain

13  obligations, I propose, to turn over certain accountings,

14  and if we're ordered to do that then we'll either do that or

15  we'll lodge appropriate objections or do whatever other

16  process we would have to do.

17         I would say that it is an international discovery

18  process because the defendants are Canadian and there is an

19  international process in place.  There are not one, but

20  three different memoranda of understanding between the U.S.

21  Securities and Exchange Commission and the various Canadian

22  Securities Commissions.  There's a whole process to go

23  through in place.  And the SEC by proceeding the way they

24  have, have brushed all of that aside and just proceeded as

25  if this were a case where all the parties were here in

Proceedings                                           6

1    Brooklyn, Your Honor, and I submit, respectfully, that

2    that's not the proper way to do things.  Rather than the

3    SEC's normal course where they do an investigation,

4    *subpoena*s, wells, notes, et cetera, et cetera, they came

5    thundering in with complaint, a TRO seeking to freeze

6    assets, which by the way, I would like to point out are

7    already frozen by the Canadian authorities making the freeze

8    something of a moot point.

9              Nevertheless, the SEC came in, they wanted that

10   freeze.  They got that freeze *ex parte*.  I was brought

11   aboard and in a sort of initial flurry in this case, sought

12   to push some of these dates back subject to the

13   jurisdictional reservation to give us some time to figure

14   out what we're going to do with this case at all.  And once

15   we got into it and looked at it, we realized the SEC has not

16   made a sufficient showing of personal jurisdiction.

17             The defendants are not American.  They did not

18   have the sufficient contacts with the United States.  We

19   believe that we can show that in a motion.  And if that is

20   all the case, if this Court doesn't have personal

21   jurisdiction, then the discovery is not proper.  So with

22   the -- with apologies, Your Honor, because if I

23   misunderstood the effect of making this premotion letter and

24   the effect of making the motion, I apologize for that.  And

25   of course, we're -- you know, I will instruct my clients to

Proceedings                                    7

1  abide by any discovery orders that your client raises.

2          That being said, the whole point of this process

3  was to make sure that we are putting the cart before the --

4  putting the horse before the cart and making sure that we

5  have jurisdiction before we do a blunderbuss discovery

6  process through -- and, you know, skipping the international

7  means by which one would normally do this kind of discovery.

8          THE COURT:  Why does the discovery have to be done

9  through the international means?  I don't understand that.

10 I mean, you have not -- other than saying that you want to

11 come in and make a motion for stay of discovery, you have

12 not indicated on what basis you are entitled to a stay other

13 than your claim that there is no personal jurisdiction.

14         MR. GOTTLIEB:  Well, that --

15         THE COURT:  I mean, today is the first time I am

16 hearing that you think the processes of the discovery are

17 not correct.

18         MR. GOTTLIEB:  The premotion letter, Your Honor,

19 does state that we want to make the motion on personal

20 jurisdiction, on Morrison grounds for failure to state a

21 claim.

22         THE COURT:  But on the Morrison grounds, I mean,

23 how did you know what the 929P issue, Dodd-Frank?

24         MR. GOTTLIEB:  Your Honor, I don't think 929P

25 means what the SEC thinks that it means.  I am aware of the

Proceedings                                    8

1   Traffic Monsoon case from the District of Utah.  That case

2   is currently on appeal with the Tenth Circuit.  Having

3   looked at those cases and looking at the briefs on both

4   sides, I frankly find the defendant's view in that much more

5   persuasive.  I don't think that that case means what the SEC

6   thinks that it means.  And even if it did, Your Honor, even

7   if it did -- and this actually goes to the question that --

8   Your Honor asked three questions in the minute order.  The

9   question was, even if you were to hold that Section 929P

10  effectively supersedes Morrison, that provision requires --

11  that provision provides jurisdiction for conduct within the

12  United States that constitutes significant steps in

13  furtherance of the violation, or conduct occurring outside

14  the United States that has a foreseeable substantial effect.

15          So in effect 929P, if it meant what the --

16          THE COURT:  Why isn't all of this -- I mean, all

17  of this about effect and substantial effect and all of this,

18  it seems like to me it is going to be difficult to resolve

19  this type of thing on a motion to dismiss.  Why again -- let

20  me repeat my question, why isn't it better to take this up

21  in the context of the hearing that has already been set?

22          MR. GOTTLIEB:  I think because the hearing that

23  would be set is going to much broader issues.  It would

24  involve much more discovery.  It would involve perhaps

25  depositions or live testimony from the clients.  And

Proceedings                          9

1   particularly given that they are involved in a Canadian

2   judicial process right now, that I would like to interfere

3   with as minimally as possible for the purposes of this

4   Court, because really, the Canadians who unquestionably have

5   jurisdiction should be the main driver here.  I would like

6   to give as much deference to that process as I can.

7           Which is another reason, Your Honor, that we would

8   advance in the motion to dismiss which would also seek a

9   discovery stay on these points for reasons of international

10  comity and letting the Canadian process play out the way

11  that it ought to.  I don't think that we should be mucking

12  about in that process.

13          THE COURT:  Did you raise that issue in your

14  letter of not interfering with the Canadian process as a

15  grounds for a stay of this action?

16          MR. GOTTLIEB:  We wrote that the individual

17  defendants face a stark choice, either surrender their U.S.

18  and Canadian procedural rights regarding discovery, or

19  decline to participate on jurisdictional grounds, which

20  risks that the overbroad requests would be converted into

21  preliminary injunctions for the remainder of the case and

22  potentially risking the ire of Your Honor, which I

23  absolutely do not want to do.

24          So we are shorthanding it a little bit in this

25  letter because it's a three-paged letter.  I'm not going to

Proceedings                                           10

1   address all the various international comity law that

2   exists, but the defendants have certain rights, including

3   Canadian procedural rights, including the right to have the

4   Commission abide by the memorandum of understanding that it

5   reached with Canadian securities regulators.

6          THE COURT:  But that is a different ground for not

7   ordering -- and, of course, discovery has been ordered.

8   Obviously that does not mean that you cannot object to the

9   discovery that has been ordered.  You have the right to do

10  that.  But the answer is not the stay, it seems to me.  The

11  answer is either that this discovery is produced or it does

12  not have to be produced for whatever reasons that you say.

13         MR. GOTTLIEB:  Well, it's perhaps -- perhaps I

14  would be skipping ahead a few steps by saying this:  But

15  taking Your Honor up on the suggestion, if we objected on

16  some of these bases and the Commission -- they -- they might

17  say okay, fine, we agree with your objection.  We will not

18  seek it.  But if they did not, then we would be right back

19  here arguing these same things.

20         I just think that it would be better to adjourn

21  any of these larger discovery issues until we first

22  determine whether there is jurisdiction here or whether the

23  SEC has stated a claim.

24         THE COURT:  But again, how is jurisdiction going

25  to be decided on this record?

Proceedings                                           11

1          MR. GOTTLIEB:  Well, there could be -- there could

2     be, I would submit, a little bit more jurisdictional

3     discovery, but it would be somewhat limited.

4          You know, first of all, of course, as Your Honor

5     knows, the burden to show jurisdiction is on the Commission.

6     Now the Commission has come in and said, well, we have got

7     all of these U.S. persons who purchased.  But what the SEC

8     may or may not have been aware of is the process for

9     purchasing had a specific check box where a purchaser would

10    have to say, I am not a U.S. person, and I am not purchasing

11    on behalf of a U.S. person.  Because people who were behind

12    Flexcoin, understanding what the uncertain scope of U.S.

13    securities laws are regarding cryptocurrency affirmatively

14    did not want to make offers into the United States.  So they

15    set up a check box that you had to check to say, I am not a

16    U.S. person.  There are terms of service that go with the

17    Flexcoin that was offered and the terms of service

18    specifically say, this is not for U.S. persons.

19          Now, these are very important considerations that

20    don't appear anywhere in the complaint.  If the people

21    behind Flexcoin were saying we don't want U.S. people and

22    basically forcing anybody in the U.S. effectively to lie, to

23    misrepresent who they were in order to take part, then it's

24    a little bit harder to say that if anyone from the

25    United States did take part, that was something that the

Proceedings                                        12

1   Plex people wanted, that they were purposefully availing

2   themselves of the jurisdiction.  When, in fact, the were

3   taking steps to purposefully not avail themselves of the

4   jurisdiction.  So some limited discovery, the documents,

5   screenshots that showed these things, and an affidavit from

6   the defendants to that effect would be and should be enough

7   to satisfy this question.  And there is, of course, case law

8   saying that in a case like this, an affidavit certainly is

9   enough to go to that point.  Given that the SEC's major

10  point of purposeful availment is this, this showing, that

11  would rebut the showing thus putting it back to the SEC to

12  show more.

13          Now, we can talk about some of the other things,

14  the idea that they used Facebook or the idea that they used

15  Internet sites that were available in the United States or

16  the idea that --

17          THE COURT:  Well, they opened the --

18          MR. GOTTLIEB:  None of that is enough under the

19  law.

20          THE COURT:  -- the PayPal, the Square Up, Stripe,

21  they opened those accounts here.

22          MR. GOTTLIEB:  Well, this goes to the first

23  question that Your Honor asked:  How does opening PayPal,

24  Stripe, et cetera, affect the personal jurisdiction

25  question?  So I have a couple of thoughts on that.

Proceedings                                    13

1          First, the Eastern District and other District

2    Courts have found that the mere use of the U.S.-based

3    payment service website is insufficient for personal

4    jurisdiction.  And we can point in this Court to *Novak v.*

5    *Pets Forum*, an Eastern District case from 2005 where the

6    Court held that collection of money from the general

7    population of Internet users through PayPal does not show

8    commercial activity through New York.

9          I would also point the Court to a case from the

10   Central District of California where a lot of these tech

11   companies were born, called *Bragg Live Foods, Inc. v. Eco*

12   *Action*, which is a California, Central District California

13   case from 2016.  And I'm happy to make these available to

14   you guys.  The Novak cite is *2005 U.S. District, LEXUS*

15   *48483, Eastern District August 1st, 2005*.  Bragg Live Foods

16   is *2016 District LEXUS 186410, Central District California,*

17   *April 29, 2016.*

18         And the Bragg Life Foods case says -- explains

19   why, elaborates a little bit more on this very sensible

20   rule.  PayPal is available for transactions from around the

21   world.  If it's used for sufficient jurisdiction, California

22   Courts would have jurisdiction over every tort and contract

23   claim involving PayPal, regardless of where the parties are

24   located and the injury occurred.  That is simply not

25   consistent with the requirements of the due process.

Proceedings                                          14

1          Bragg Life Foods went on to say the defendant's

2     acceptance of U.S. dollars from customers worldwide or

3     overseas and their alleged affiliation with a bank licensed

4     in New York, which by the way, is a fact that we don't even

5     have here because the defendants here were using Canadian

6     and other banks, that does not indicate purposeful direction

7     at the United States.  And the reasons for this is clear:

8     Because these services, while they were originally U.S.

9     companies, have become international companies.  They may be

10    U.S. residents, but they have foreign and international

11    flexibility.  For example, you can go to www.paypal.com/CA,

12    the Canadian site, to see how PayPal works in Canada if

13    you're a Canadian citizen.  You can sign up from there and

14    use it from there.

15          Similarly, squareup.com/CA for Square;

16    stripe.com/CA for Stripe, a page that -- the global page

17    notes that Stripe is available for business in 25 countries,

18    accepts payments from anywhere in the world, and Facebook

19    was the only one of these four that did not have a

20    particular Canadian page.  And the reason for that is their

21    payments and terms page specifies person-to-person transfer

22    in the U.S. and Canada, person-to-person transfer of funds

23    by people who are residents of or have their principal place

24    of business in the U.S. or Canada may be made available to

25    you in the messenger service at our sole discretion.

Proceedings                                    15

1           So to answer Your Honor's question directly, the

2     use of these services has not been held to be sufficient for

3     personal jurisdiction, and it makes very good sense why.

4     Because anyone in the world can use them from anywhere in

5     the world.  The fact that they were originally conceived in

6     somebody's garage in Palo Alto is no longer relevant in the

7     age of the Internet.

8           To put one more fine point on this, Courts have

9     consistently found that unilateral action of a U.S. person

10    is not enough to create personal jurisdiction of someone who

11    would not otherwise be subject to personal jurisdiction.  So

12    if a U.S. person misrepresented their status in connection

13    with a Flexcoin transaction and entered a Flexcoin

14    transaction effectively under false pretenses, and I'll cite

15    here a Second Circuit case.  This is the *Porina v. Marward*

16    *Shipping Company, 521 F.3d, 122, Second Circuit, 2008*.

17    Unilateral activities of third parties cannot in themselves

18    satisfy the requirement of contact with the forum.

19          So returning to Your Honor's larger question about

20    how are we going to handle this going forward and don't we

21    need some discovery?  Some very limited discovery indicating

22    these screenshots showing that they were trying to keep

23    people outside of the U.S., the terms of service showing

24    that it was not a U.S. -- it was not made for offer in the

25    U.S., and an affidavit explaining how these worked really

Proceedings                                    16

1    should be sufficient to show that there was no purposeful

2    availment in the United States.  And to the extent that the

3    SEC with its capacity for investigation, with its capacity

4    to cooperate with Canadian authorities to get further

5    information if the SEC cannot make a showing to overcome

6    that, then I don't see that we have personal jurisdiction

7    and that's the SEC's burden to show.

8           THE COURT:  All right.  Mr. Tenreiro, what is your

9    position with respect to the question of personal

10   jurisdiction?

11          MR. TENREIRO:  Thank you.

12          THE COURT:  Do you need discovery?

13          MR. TENREIRO:  Well, Your Honor, we think that the

14   complaint on its own establishes personal jurisdiction and

15   meets our burden to establish a *prima facia* case of personal

16   jurisdiction.  So we don't think that we need discovery, but

17   if Mr. Gottlieb's suggestion that there's all these other

18   facts that need to be put into the record are to be taken,

19   you know at face value, and he wants to put in affidavits

20   from the defendants, then we will want discovery on what

21   they're saying they did to avoid U.S. jurisdiction.

22          Already, you know, we put in our letter

23   information about account services like PayPal and Kraken,

24   there's more information as we go through discovery that

25   comes up such as that Mr. McCraw opened an account at an

Proceedings                                                17

1   entity known as Poloniex, which is a digital asset transfer

2   service, and that entity when you go to the website, the

3   very first line says, we are a U.S.-based entity and we

4   provide services from the United States.  So when he's

5   talking about unilateral action by another individual in the

6   United States, I think they're completely ignoring that the

7   defendants opened accounts not just for processing payments

8   but to extract the proceeds of their own conduct from the

9   block chain and these are accounts in the United States.

10          That has been for time memorial sufficient to

11  establish personal jurisdiction.  We have that in the

12  complaint where allegations that establishes, at least in

13  *prima facia* case.  So we do not think we need discovery.  We

14  think we would win this motion just on the papers, but if

15  they are going to want to put something else in, then we're

16  going to want to kind of test and push some of the buttons

17  of what the affidavits or the evidence that they're

18  purporting to put in.

19          THE COURT:  All right.

20          All right.  Counsel, in terms of making this

21  motion, are you going to put in affidavits in evidence in

22  support of your motion that there's no personal

23  jurisdiction?

24          MR. GOTTLIEB:  I think, Your Honor, that the

25  screenshot showing that they tried to keep U.S. persons out

Proceedings                                    18

1   in terms of service, I think those two documents are key

2   because --

3          THE COURT:  So the answer's yes?

4          MR. GOTTLIEB:  The answer is yes for that.

5   Because without that, it -- the SEC's frankly misleading

6   view of how purposeful availment works.  That's kind of the

7   complaint might suffice, but that's not the whole story.  I

8   mean, in terms of -- in terms of affidavit, I mean, we would

9   be very limited essentially.  We have the screenshot, but it

10  is just a piece of paper so you would need someone to say

11  yes, I put this into the system to keep people from the U.S.

12  out.  But effectively, that would be the only thing that we

13  would need to say.

14         THE COURT:  Well, that wouldn't need to be tested.

15  That would have to just be accepted as a fact?

16         MR. GOTTLIEB:  But how would you test that,

17  Your Honor?  I mean, unless you are -- the process is there.

18  The screenshot is there.  The SEC has the capability of

19  finding that out for themselves, of getting that from the

20  Canadians.  Why it's not in the complaint is a little bit

21  mysterious to me, frankly.

22         The SEC has the capacity of testing this without

23  having to drag all of us up to Canada or drag the defendants

24  into the United States to give them a long deposition on

25  what?  Is this document actually a true document?  Yes, it

Proceedings                                          19

is.  Okay.  I'm not quite sure what else the SEC's going to

do.  Are they going to try to test his credibility on

whether this document was part of the process or not?  They

can -- they can test that.  I mean, that's proof.  We don't

need him to prove that.

          I'm not exactly sure what testing we're talking

about.

          THE COURT:  Well, what discovery is now

outstanding?

          MR. TENREIRO:  Your Honor, the accounting of the

proceeds from the actions at issue in the complaint as well

as a list of bank accounts and brokerage accounts and

blotching accounts, those are the two things that the

deadlines have passed.

          THE COURT:  Is there any other discovery that's

sought other than that?

          MR. TENREIRO:  There is discovery that is sought

and the deadline is still, I believe the 20th of January.

We sent them a document request that, you know, covers a

number of items, including communications with investors

that would presumably capture not just a screenshot of what

the website might exist today, but what they actually

obtained from investors that were actually purchasing at the

time of the purchases.  What evidence they have, what

records they have that were created when these people

1    presumably checked the box in July and August of 2017.  I

2    don't want to get the dates wrong, but not how the website

3    exists today and other requests for documents is outstanding

4    but the deadline has not passed.

5              THE COURT:  Well, when can you make your motion,

6    Counselor?  Because we have got a hearing that's scheduled.

7    I do not want to delay the hearing.

8              MR. GOTTLIEB:  We --

9              THE COURT:  So you can make your motions next

10   week?

11             MR. GOTTLIEB:  Yes.  Well, I would be willing

12   to -- counsel and I have talked about that before.

13             THE COURT:  Okay.

14             MR. GOTTLIEB:  I would be willing to put in my

15   opening brief January 26th.  This -- the Commission said

16   that February 23rd is the opposition date, and I would like

17   until March 13th.

18             THE COURT:  The hearing is March 2nd.

19             (Pause in proceedings.)

20             THE COURT:  When is the hearing?

21             MR. TENREIRO:  March 5th, I believe, perhaps.

22             THE COURT:  We are talking about not resolving

23   this issue, then, according to your briefing schedule,

24   before the hearing?

25             MR. GOTTLIEB:  That's correct, Your Honor.  We

Proceedings                                                    21

1    would be -- as part of it we would be seeking to put off the

2    hearing.

3              The hearing is whether the TRO that's currently in

4    place should be converted to a preliminary injunction.

5              THE COURT:  Are you agreeing the TRO being kept in

6    place?

7              MR. GOTTLIEB:  Yes.

8              THE COURT:  Pending all of this litigation?

9              MR. GOTTLIEB:  Yes, yes.  And the reason that is,

10   Your Honor, is it is of little bit moot.  As we mentioned,

11   there is currently a very broad freeze in place in Canada

12   already.  So the fact that there is a freeze here under the

13   TRO doesn't really affect anything.  It could be different

14   if the freeze were lifted in Canada, but from what I

15   understand from Canadian counsel, that's not likely to

16   happen by any time before this hearing.  So it

17   really wouldn't make a difference from Defendant's point of

18   view.  We're perfectly happy to give you that time back in

19   your life, Your Honor, and put that hearing off.

20             THE COURT:  How is the SEC in any way injured if

21   the TRO remains in effect by resolving some of these issues

22   ahead of time?

23             MR. TENREIRO:  Your Honor, if I may respond a

24   little bit more broadly from the beginning?  Mr. Gottlieb

25   was talking about putting the cart before the horse.  This

Proceedings                                          22

1    Court made a preliminary determination when it reviewed the

2    Commission's *ex parte* papers and made a determination

3    presumably that there was some showing of jurisdiction and

4    some showing of Morrison.  So they're coming in to say that

5    none of that has been shown and the reason they're dragged

6    into court, and I respectfully submit that that is

7    incorrect.  As Your Honor suggested, it does not make any

8    sense to do all of these things two times.

9            Now, if defendants want to agree to extend the TRO

10   and extend the hearing, that's fine.  But it sounds like

11   where we're heading is some discovery on this personal

12   jurisdiction motion and then more discovery on the things

13   that are additional things that are relevant at the hearing.

14   As the Court said, the personal jurisdiction issue is still

15   relevant at the hearing.  So we do not see any need to have

16   multiple stages of discovery, certainly not what they

17   already owe us.  And we do not see a need to have repeated

18   briefing on these things.

19           If the Court wants to postpone the hearing, I

20   think we would be okay with that if they were to agree to

21   extend the TRO, but we would have to talk about some of the

22   things that are outstanding.  As we mentioned in our letter,

23   it does prejudice the Commission that we do not know exactly

24   how many -- you know, what funds are outstanding, how many

25   victims there were in the United States.

Proceedings                                    23

1          Mr. Gottlieb talks about the status quo and funds

2   being frozen in Canada, but that's not everything that is at

3   issue here.  Today the websites are still available.

4   Statements are still being made about Flexcoin, despite them

5   being under a TRO not to offer or sell securities in the

6   United States.  So we think that we need to resolve this

7   quickly because despite the TRO, the website is there.

8   Facebook accounts are there.

9          THE COURT:  Well, you said you need to resolve

10  them quickly, but you would not object to the hearing being

11  put off.  So I am a little bit lost.

12          MR. TENREIRO:  So we would not object to the

13  hearing being put off, but we do not think that that means

14  that we should stay discovery as to all the other issues is

15  essentially what I am trying to convey.  We want to go on,

16  and if they need some time to --

17          THE COURT:  Well, can the issue of personal

18  jurisdiction be resolved if we resolve that one issue

19  quickly and then go forward with all the discovery?

20          MR. TENREIRO:  Sure.  If we can resolve that issue

21  quickly, and perhaps --

22          THE COURT:  I mean, in fairness, we can resolve --

23  just brief the personal jurisdiction issue first.  We will

24  resolve that.  If that is resolved against you, then we will

25  proceed with all the discovery that has been ordered.  I

Proceedings                                    24

1    mean, I think that is a fair resolution, but let's get this

2    done quickly.

3              MR. GOTTLIEB:  I think that makes sense,

4    Your Honor.

5              THE COURT:  Okay.  So let's just do that aspect of

6    it.

7              MR. GOTTLIEB:  Okay.

8              To clarify, Your Honor, personal jurisdiction is

9    one issue, that is the 12B2 issue.  Should that motion also

10   include 12B6 matters such as failure to plead under

11   Morrison --

12             THE COURT:  No.  I really think we should hold off

13   on that.  I think that is going to be a little bit back

14   bound, and I think maybe we should have the hearing.  We

15   should go forward with the hearing and those issues can

16   be --

17             MR. GOTTLIEB:  Can be part of the hearing?

18             THE COURT:  Part of the hearing, yes.  I think it

19   is a preliminary -- I mean a personal jurisdiction issue.  I

20   understand your need to resolve that before we proceed with

21   full-fledged discovery here.

22             MR. TENREIRO:  I'm sorry, Your Honor, my only

23   clarification is whether there would be some sort of limited

24   discovery or --

25             THE COURT:  Well, no.  You can have discovery on

Proceedings                                25

1    the personal jurisdiction issue for sure.

2            MR. TENREIRO:  Okay.

3            THE COURT:  I do not think counsel just has to

4    accept your affidavit, whatever they say about this.  So,

5    you know, there can be a limited period of discovery on the

6    personal jurisdiction issues.  But I do not see that the SEC

7    is really harmed by not going forward with all of the rest

8    of the discovery until we resolve this personal

9    jurisdiction.  So why don't we just leave it -- not going

10   forward with any discovery now other than the personal

11   jurisdiction discovery.  Maybe you can do that for a couple

12   of weeks and then make the motion.

13           Does that work with the scheduling you have?

14           MR. TENREIRO:  So, Your Honor, the only thing that

15   I should raise is that if -- I do not know exactly how they

16   want to do it.  I know that their client has had some

17   availability issues at some point.  I do not know exactly --

18   if we are going -- I suggested in my letter that we had

19   offered to travel to Canada.  If we are going to do that, we

20   need four weeks to give notice to the State Department and

21   to their State Department.  If they are willing to come

22   here, it would be less.  So that is just something that -- I

23   do not want to be put on the spot now, that would affect

24   whether it is two or four weeks before we can travel to

25   Canada.

Proceedings                                                    26

1          THE COURT:  Why don't I do this:  Why don't the

2    two of you sit down together and see if you can work

3    something out in terms of a schedule.  If you cannot, just

4    write me a letter and tell me where your areas of

5    disagreement are.  It seems like maybe -- you know, you seem

6    to be reasonable people.

7          MR. GOTTLIEB:  We are friends.  We go back.

8          THE COURT:  You would not want to ruin a beautiful

9    friendship.

10         So why don't you just see if you can work out a

11   schedule that accommodates your concerns.

12         But my proposal is that we resolve personal

13   jurisdiction first.  Then you do jurisdictional discovery,

14   that we hold off other discovery until that issue is

15   resolved, and then we can discuss the issue of, you know,

16   whether it states a claim.  I think that is going to involve

17   evidence beyond the complaint in any event.  That will be

18   all taken together in terms of the hearing, and we will

19   resolve that issue at the hearing.  So that is where we

20   stand, and I will let you gentlemen try to work out the

21   schedule that works for you.

22         MR. TENREIRO:  And I suppose, Your Honor, we'll

23   submit something to the extent so the Court may extend in

24   terms of the TRO..

25         THE COURT:  Right, uh-huh.  Counsel does not

Proceedings                                    27

1    object to that?

2           MR. GOTTLIEB:  Correct.

3           THE COURT:  Okay.  Thank you.

4           Can you get me your proposal, whatever you work

5    out by the end of the day, Thursday?

6           MR. TENREIRO:  Yes.

7           MR. GOTTLIEB:  I will certainly -- yes.

8           THE COURT:  All right.  Thank you.

9           MR. TENREIRO:  Thank you, Your Honor.

10          (Matter concluded.)

11                            -oo0oo-

12

13

14

15    *I (we) certify that the foregoing is a correct transcript*

16    *from the record of proceedings in the above-entitled matter.*

17         */s/ David R. Roy*              *February 22, 2018*
           *DAVID R. ROY*                      *Date*

18

19

20

21

22

23

24

25