UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

    -against-

PLEXCORPS (a/k/a and d/b/a PLEXCOIN
and SIDEPAY.CA), DOMINIC LACROIX,
and SABRINA PARADIS-ROYER,

                Defendants.
-------------------------------------------------------x

NOT FOR PUBLICATION
**ORDER**
17-CV-7007 (CBA) (RML)

**ROSS, United States District Judge:**

On December 1, 2017, Plaintiff Securities and Exchange Commission (the "SEC") brought the instant action against Defendants PlexCorps (a/k/a and d/b/a PlexCoin and Sidepay.ca), Dominic Lacroix ("Lacroix"), and Sabrina Paradis-Royer ("Paradis-Royer," and with Lacroix, the "Individual Defendants"), alleging securities fraud in violation of the Securities Act of 1933, 15 U.S.C. § 77a et seq.; the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.; and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

The Complaint centers on so-called "PlexCoin Tokens" ("PlexCoin"), which are electronically stored assets dubbed as "cryptocurrency" or "digital currency." Although they are not legal tender and lack the backing of any government, PlexCoin Tokens consist of secure computer data stored on an online network, and they represent financial value. The SEC generally contends that Defendants unlawfully participated in a fundraising scheme to amass more than $15 million from tens of thousands of investors who purchased PlexCoin.

That day, the Honorable Carol Bagley Amon, United States District Judge, entered an ex parte order directing Defendants to show cause why a preliminary injunction should not issue for the alleged securities violations. (D.E. # 10 ¶ 1.) In addition, Judge Amon issued an order

1

"[t]emporarily freezing Defendants' assets, including but not limited to the accounts identified in" an attached exhibit, until she decided whether to issue a preliminary injunction. (Id. ¶ 2.) In relevant part, the freeze order provided:

> IT IS FURTHER ORDERED that, pending a hearing [on the preliminary injunction], Defendants and each of their financial and brokerage institutions, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of [this] Order . . . , hold and retain within their control and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment[,] or other disposal . . . of any assets, funds, or other property (including money, virtual currency[,] or other digital asset . . . in whatever form such assets may presently exist and wherever located) of, held by, or under the control of Defendants, whether held in their name or for their direct or indirect beneficial interest . . . , including but not limited to the assets listed in Schedule A.

(Id. at 9–10.) Schedule A listed the usernames of three accounts with the payment processing company Stripe and identified three unique alphanumeric pseudonyms associated with specific individuals who possess so-called "Bitcoin" or "Ethereum." Like PlexCoin, Bitcoin and Ethereum are digital assets representing financial value. Judge Amon found the freeze order necessary "to preserve the status quo and to protect the Court's ability to award relief in the form of disgorgement of ill-gotten gains, prejudgment interest and civil penalties." (Id.) On December 8, 2017, Judge Amon extended the temporary freeze order against the Individual Defendants, who consented, until the preliminary injunction proceeding. (D.E. # 19 at 3.) On January 11, 2018, Judge Amon reaffirmed the extension on consent of the SEC and Individual Defendants. (D.E. # 32 at 2.)

Before this Court, as Miscellaneous Judge for the Eastern District, is the SEC's ex parte application for an order directing Lacroix to show cause why he should not be held in contempt and subject to sanctions for alleged violations of Judge Amon's temporary freeze order, as well as another temporary freeze order specifically naming three accounts purportedly related to Lacroix's

2

violations. This Order addresses only the latter request, and the Court leaves the first request to Judge Amon.

The securities statutes provide that, in actions brought by the SEC, "a permanent or temporary injunction or restraining order shall be granted without bond." 17 U.S.C. §§ 77t(b), 78u(d)(1). Because it has "specific statutory authority to do so," Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 131 n.11 (2d Cir. 2014), this Court may issue temporary asset freeze orders so that, "in the event the SEC obtains a judgment, money will be available to satisfy that judgment," SEC v. Byers, No. 08-CV-7104 (DC), 2009 WL 33434, at *2 (S.D.N.Y. Jan. 7, 2009). See also Smith v. SEC, 653 F.3d 121, 127–28 (2d Cir. 2011) (discussing asset freeze orders in SEC cases); SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1103–04 (2d Cir. 1972) (same). The freeze order also "preserve[s] the equitable remedies of a return of lost profits and an accounting . . . ." Klipsch Grp., Inc. v. Big Box Store Ltd., No. 12-CV-6283 (AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012). "It is well settled that the granting of a temporary injunction, pending final hearing, is within the sound discretion of the trial court . . . ." Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940).

Currently, the parties are litigating whether the Court has personal jurisdiction over the Individual Defendants in this action. (See D.E. # 60.) Still, in issuing her initial temporary orders, Judge Amon found that, at least for purposes of temporary relief, the SEC has made a sufficient showing that this Court has personal jurisdiction over Lacroix for this action. This is law of the case. "Once personal jurisdiction of a party [for temporary relief] is obtained," this Court may freeze assets under the party's control regardless of "whether the property be within or without the United States." United States v. First Nat'l City Bank, 379 U.S. 378, 384 (1965).

The Second Circuit repeatedly has emphasized the exceedingly light burden that the SEC must overcome in seeking a temporary asset freeze order. The SEC need show only that "an inference can be drawn that the party has" committed a violation. See Smith, 653 F.3d 121, 128 (2d Cir. 2011) (quoting Byers, 2009 WL 33434, at *3); see also SEC v. Unifund SAL, 910 F.2d 1028, 1041 (2d Cir. 1990) (noting that temporary asset freeze orders may be granted, "even in circumstances where the elements required to support a traditional SEC injunction have not been established," when "[t]here is a basis to infer" a violation).

The Court also must issue asset freeze orders in compliance with Rule 65 of the Federal Rules of Civil Procedure. See Gucci Am., 768 F.3d at 129–30 & n.9. Ordinarily, under Rule 65(b), the Court may issue temporary relief ex parte only if (1) "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." If the Court issues such relief, the Court generally must, among other things, "state the reasons why [such relief] issued," "describe the injury," "state why it is irreparable," "state why the order was issued without notice," and "state its terms specifically," with "reasonable detail" and without references to pleadings or other court filings. Fed. R. Civ. P. 65(b)(2), 65(d)(1). However, in cases brought by the SEC, the agency need not make a showing of irreparable harm. See Smith, 653 F.3d at 127. The order expires "at the time after entry—not to exceed 14 days—that the [C]ourt sets." Id. 65(d)(1).

The Court has considered the exhibits to the SEC's ex parte application, the SEC's brief in support of the application, and prior filings in this action. Based upon those documents, the Court finds that the SEC has shown at least a basis to infer the following:

4

1. Lacroix participated in a scheme to obtain more than $15 million in proceeds from unlawful activities related to PlexCoin, which constitute investment contracts subject to the securities statutes.

2. The Court has subject-matter jurisdiction over this action and personal jurisdiction over Lacroix. Venue also properly lies in the Eastern District.

3. Lacroix holds an account in his name at https://bylls.com, also known as "SatoshiPortal." The associated user number is 4732.

    a. From December 29, 2017, to May 3, 2018, after Judge Amon had issued her temporary asset freeze order, Lacroix spent $5,113.35 from his SatoshiPortal account to make four payments to credit-card bills.

    b. On January 5, 2018, Lacroix transferred $384.80 from his SatoshiPortal account to an individual named Carole Bolduc.

    c. The five payments total $5,498.15. After Judge Amon had issued her temporary asset freeze order, Lacroix attained at least a portion of these funds by converting Bitcoin from accounts used to store assets that PlexCoin purchasers had provided to his fundraising scheme.

4. Lacroix helped to create and controls a SatoshiPortal account in the name of his brother, Pascal Lacroix ("Pascal"). The associated user number is 7513.

    a. Lacroix transferred Bitcoin out of accounts used to store assets that PlexCoin purchasers had provided to his fundraising scheme. Lacroix converted the Bitcoin to $30,969.47 and transferred the funds into Pascal's SatoshiPortal account. Lacroix used the money as a down payment so that InterAxe Inc. could lease a 2018 Mercedes-Benz GLE sports-utility vehicle in Montreal,

Canada, on or about March 2, 2018. Lacroix serves as the principal shareholder, president, and secretary of InterAxe Inc.

5. Lacroix controls an account under Pascal's name at Tangerine Bank, a banking institution in Canada. The account number is 4007835593.

   a. Starting no later than January 12, 2018 and lasting until April 26, 2018, at the earliest, Lacroix converted Bitcoin to $199,826.64, which he transferred from Pascal's SatoshiPortal account to Pascal's Tangerine Bank account. Lacroix derived at least a portion of the Bitcoin from accounts used to store assets that PlexCoin purchasers had provided to his fundraising scheme.

   b. After Judge Amon had issued her temporary asset freeze order, Pascal issued several checks under Lacroix's direction and from the Tangerine Bank account. Pascal issued two checks totaling $3,920.13 to a kitchen and fine custom cabinetry business for work in Quebec at 468 Rue des Manitobains, a two-floor residential property built in 2017 and owned by Lacroix. Pascal issued three checks totaling $6,543.26 to a surface decoration services company for work at 468 Rue des Manitobains. Finally, Pascal issued a check of $10,774.40 to a surround-sound installation services company for work at 468 Rue des Manitobains.

6. The SEC properly made its application ex parte because Lacroix would have continued to dissipate and conceal assets under his control—including moving funds to accounts under others' names but his control—if he received notice that the SEC is aware of his latest attempts to dissipate investor assets related to the PlexCoin fundraising scheme. The SEC's counsel also represented as much.

7. There is a grave risk that, if the SEC had provided Lacroix prior notice, he immediately would transfer assets beyond this Court's and the SEC's reach to avoid paying any final judgment that may issue in this action.

In light of these findings, this Court cannot "be assured that [Lacroix] would not waste [his] assets prior to refunding . . . investors' money." <u>Manor Nursing Ctrs.</u>, 458 F.2d at 1106. The Court finds that additional ancillary relief is necessary to maintain the <u>status quo</u>. Still, the Court finds it appropriate at this point to freeze assets only in the accounts described above, because Judge Amon has already issued a global asset freeze order. Accordingly, because the SEC has shown good cause, the Court GRANTS the SEC's <u>ex parte</u> application for a temporary freeze order directed specifically at Lacroix and the assets in his SatoshiPortal account, Pascal's SatoshiPortal account, and Pascal's Tangerine Bank account.

Accordingly, **IT IS HEREBY ORDERED** that, for 14 days after the entry of this Order, or as extended by Judge Amon upon showing of good cause or consent, Lacroix and each of his financial and brokerage institutions, agents, servants, employees, and attorneys—as well as those persons in active concert or participation with him who receive actual notice of this Order by personal service, facsimile service, telephonic notice, email notice, any other means permitted in this Order, or otherwise—hold and retain within their control and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal (including the use of any credit cards or any other incurring of debt) of any assets, funds, or other property (including money, virtual currency or other digital asset, real or personal property, securities, commodities, choses in action, or other property of any kind whatsoever, in whatever form such assets may presently exist) of, held by, or under the control of Lacroix, whether held in his name or for his direct or indirect beneficial interest, in the following accounts:

1. SatoshiPortal/bylls.com Account with User Number 4732;

2. SatoshiPortal/bylls.com Account with User Number 7513; and

3. Tangerine Bank Account # 4007835593.

**IT IS FURTHER ORDERED** that a copy of this Order and the papers supporting the SEC's <u>ex parte</u> application, including the portions relating to its pending request for an Order to Show Cause, be served upon Lacroix on or before June 18, 2018, by transmitting it to Lacroix's most recent known address by Federal Express or other overnight service, or by delivery to his counsel of record. Lacroix is reminded that, pursuant to Judge Amon's temporary orders, he and his agents are "enjoined and restrained . . . from destroying, altering, or concealing all documents, books, and records"—including those potentially related to the Order to Show Cause—"that are in the possession, custody, or control of Defendants," their agents, or their co-participants. (D.E. # 10 at 10–11; D.E. # 32 at 2.)

SO ORDERED.

Issued at: 2:35 p.m.
June 15, 2018
Brooklyn, New York

Allyne R. Ross
United States District Judge