UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,          :
                                             :
                      Plaintiff,          :          17 Civ. 7007 (CBA-RML)
                                             :
      - against -                           :          ECF Case
                                             :
PLEXCORPS                                    :
(a/k/a and d/b/a PLEXCOIN and SIDEPAY.CA),   :
DOMINIC LACROIX and                          :
SABRINA PARADIS-ROYER,                       :
                                             :
                      Defendants,         :
                                             :
----------------------------------------------------------------------- x


**DEFENDANT DOMINIC LACROIX'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO ORDER TO SHOW CAUSE</u>**


                                                Jason P. Gottlieb
                                               MORRISON COHEN LLP
                                               909 Third Avenue
                                               New York, New York 10022
                                               (212) 735-8600
                                               *Attorneys for Defendants Sidepay Ltd.,*
                                               *Dominic Lacroix, and Sabrina Paradis-Royer*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

   I.   THE SEC DOES NOT LINK PLEXCOIN-RELATED FUNDS TO ANY
       IMPROPER ACTIVITY ........................................................................................... 4

       A.   The SEC's Evidence Does Not Link Funds Obtained From PlexCoin to Funds
            Allegedly Spent in Violation of This Court's Order ..................................................... 4

       B.   The SEC's Evidence of PlexCoin Funds Is Not From Any Investor Funds,
            But From a Government Agent ..................................................................................... 7

   II.   AT MOST, THE SEC HAS SHOWN THAT CORPORATE ENTITIES
       ASSOCIATED WITH LACROIX AND LACROIX'S BROTHER SPENT FUNDS ...... 8

   III.   THE SEC'S MOTION UNDERLINES THAT THIS CASE BELONGS IN
        CANADA ..................................................................................................................... 9

CONCLUSION ...................................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*A.I. Trade Fin., Inc. v. Petra Bank*,
    989 F.2d 76 (2d Cir. 1993)..................................................................................................9

*Asahi Metal Indus. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987)............................................................................................................9

*Huber v. Marine Midland Bank*,
    51 F.3d 5 (2d Cir. 1995)......................................................................................................4

*In re Maxwell Commc'n Corp.*,
    93 F.3d 1036 (2d Cir. 1996)................................................................................................9

*Ole Media Mgmt., L.P. v. EMI April Music, Inc.*,
    No. 12-cv-7249 (PAE), 2013 U.S. Dist. LEXIS 82073 (S.D.N.Y. June 11, 2013).............9

*SEC v. Aragon Capital Advisors, LLC*,
    No. 07 Civ. 919 (FM), 2011 U.S. Dist. LEXIS 82531 (S.D.N.Y. July 26, 2011) ...............4

*SEC v. Musella*,
    818 F. Supp. 600 (S.D.N.Y. 1993) .....................................................................................4

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)............................................................................................................9

Defendant Dominic Lacroix respectfully submits this opposition to the Plaintiff Securities and Exchange Commission's Order to Show Cause why Lacroix should not be held in contempt for violating this Court's December 1, 2017 Temporary Restraining Order.

**PRELIMINARY STATEMENT**

The entire point of an asset freeze is to ensure that monies raised through allegedly violative activity are not dissipated.  The SEC has not shown that any such dissipation has occurred.  The SEC has not shown that any money raised in PlexCoin transactions was used for any of the transactions the SEC alleges were violations of this Court's orders.  The SEC has shown that some cryptocurrency used to purchase Plexcoin – 0.0001 Bitcoin, or about 32 cents at the time – was moved to another account, in August 2017, months before this Court's December 1, 2017 asset freeze order.  But the SEC has not shown that any other Bitcoin raised in the PlexCoin sale was moved or used for anything after this Court's order was in place.  The SEC's evidence – a long chain of broken links – fails to connect any Bitcoin obtained in the PlexCoin sale to any of the expenses cited as violative by the SEC.  Accordingly, the SEC has not demonstrated that Lacroix used any funds raised in connection with PlexCoin in violation of this Court's orders.

The SEC – taking the broadest possible view of the Order and asserting that it freezes <u>all</u> of Defendants' assets for <u>any</u> transaction whatsoever – has asserted that Lacroix's brother, Pascal Lacroix, paid for certain expenses for Defendants, and that two companies with which Lacroix is associated paid for a lease on a car.  However, the evidence the SEC has presented does not show (to the requisite "clear and convincing" standard) that these activities violated this Court's orders.  It is natural and understandable, indeed entirely predictable, for a person subject to an asset freeze to receive assistance from family members.  And although the

1

SEC accuses Dominic Lacroix of nefariously plotting to move money through an account in his brother's name but that he controls, the bank where that account is located confirmed that it is Pascal's account, and that Pascal controls it. As far as the car lease is concerned, the SEC's evidence shows that a corporate entity paid for the lease, but has not shown that Lacroix himself violated the order.

The SEC's contempt motion raises two further points.

First, the SEC's litigation strategy continues to be incredibly overreaching, now to the point of being abusive. The SEC appears to contend that the asset freeze applies to any expenditures of all funds, from any entity connected in some way to Defendants. The SEC's interpretation would literally prevent Defendants from buying lunch, or a stick of gum, even from funds having nothing to do with PlexCoin. Defendants already have been forced to rely on family and friends for any support. The SEC's aggressive motion here – which targets money from Lacroix's family – seems designed to preclude even that family assistance.

In contrast to the SEC's broad interpretation and onerous enforcement, the SEC has only been able to evidence, per the May 22, 2018 Declaration of the SEC's Elzbieta Wraga, that $1,078,136.58 of the funds raised were acquired from the United States – some 7.2% of the total alleged raise. The SEC should not be entitled to a freeze of all of Defendants' assets on this evidence. Even if this Court has personal jurisdiction over the Defendants, the SEC does not have jurisdiction over monies that came from foreign persons and went to foreign persons. The SEC should only be entitled to a freeze on the assets over which it could possibly have jurisdiction.

The SEC might well respond that in that case, Defendants should move for partial relief from the stay. That response is a trap. The SEC would assert, in response to any such

motion, that full discovery, including testimony from the Defendants, is required to "prove" that monies did not come from PlexCoin – which the SEC knows is an impossible ask under the circumstances. Further, the SEC would not accept any "limits" on its freeze – it would, instead, assert that the "proper" amount to be frozen is no less than the entire value of the PlexCoin sale (which the SEC has asserted was an unregistered securities offering, where full rescission is the appropriate remedy), plus penalties, which could range up to three times the disgorgement amount. Thus, practically speaking, the SEC's position is that there should be no limit to the freeze, and would litigate heartily to defend that position. And worse, the message of the SEC's motion is that even any assets from family or friends that Defendants may use to litigate this action may be subject to collateral attacks and accusations. That litigation strategy is designed to abuse Defendants into submission.

<u>Second</u>, the SEC's contempt motion emphatically underlines why this case belongs in a Canadian court alone, and why Defendants' pending motion to dismiss on jurisdictional grounds should be granted. As the SEC's own evidence reflects, Quebec's AMF has already made this same contempt motion, based on the same factual allegations, and the parties have been litigating these exact same issues in Canada. As a result, by order of the relevant Canadian court (the Quebec Financial Markets Tribunal), Mr. Lacroix has already been forced to deposit a substantial amount of cryptocurrency into the receivership of the Canadian court, and been ordered to produce other materials and information as well. This fight has already been fought, in Canada, and much of the relief the SEC seeks has already been ordered by the Canadian court. Once again, this proceeding is the tail wagging the dog.

As a technical matter, Lacroix's provision of this cryptocurrency to the Canadian court might even be said to violate this Court's freeze order. While such a violation (if it were

3

one) would presumably be excusable, as it is the result of a direct order of a court of competent jurisdiction, it demonstrates the conflicts omnipresent between these two legal proceedings. If this Court were to grant the relief the SEC requests in its motion, part of that order – a payment of fines – would violate the Canadian freeze. And if this Court were to grant the SEC's desired relief sought in the Complaint – rescission and penalties – it would deprive the Canadian court of any assets over which it could order relief. And so on. It simply makes no sense to expend this Court's resources – and to force Defendants to beg family and friends for even more resources – to fight the same fights in two different places. This fight belongs in Canada.

## ARGUMENT

A finding of civil contempt requires: (1) a "clear and unambiguous" order; (2) "clear and convincing" proof of non-compliance, and (3) that "the party has not been reasonably diligent and energetic in attempting to comply with the order." *SEC v. Musella*, 818 F. Supp. 600, 601-02 (S.D.N.Y. 1993) (citing *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Joint Apprentice-Journeyman Educ. Fund*, 925 F.2d 588, 594 (2d Cir. 1991)); *see also Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995); *SEC v. Aragon Capital Advisors, LLC*, No. 07 Civ. 919 (FM), 2011 U.S. Dist. LEXIS 82531 (S.D.N.Y. July 26, 2011).

**I.   THE SEC DOES NOT LINK PLEXCOIN-RELATED FUNDS TO ANY IMPROPER ACTIVITY**

    **A.   The SEC's Evidence Does Not Link Funds Obtained From PlexCoin to Funds Allegedly Spent in Violation of This Court's Order**

The SEC sets out a chain of evidence that apparently is intended to show that PlexCoin funds were used improperly. However, the SEC's evidence chain does not come close to making that showing.

4

The SEC begins the chain by saying that "funds raised during the PlexCoin ICO were directed through a number of addresses on the Bitcoin blockchain." SEC Brief (Dkt#71) at 2. For support, the SEC refers to a declaration by the Commission's Jorge Tenreiro, and a single exhibit (Tenreiro Decl. Exhibit N (Dkt. # 71-16)). But, all that exhibit shows (per Tenreiro Decl. ¶ 24) is that 0.0001 Bitcoin – as of this writing, approximately 64 cents[1] – was transferred to an address PlexCoin provided, and then transferred to a different address, on August 7, 2017 – three months before this Court's freeze order.

The SEC then uses a commercial Bitcoin tracing product (the provenance and/or accuracy of which is unknown), in order to trace this 0.0001 Bitcoin. The SEC states that it was moved to a different wallet, which held 68.9 Bitcoin. Tenreiro Decl. ¶ 26. But then there is no more mention of that 0.0001 Bitcoin. None. One might think that the SEC was going to show how that 0.0001 Bitcoin was then used in violation of this Court's order, particularly as the very point of a blockchain-based cryptocurrency is that transactions are recorded on a distributed, immutable, public ledger. However, the SEC does not trace that 0.0001 Bitcoin to any improper transactions. Instead, the SEC asserts that the 0.0001 Bitcoin was moved, before the freeze, to a "wallet" (an electronic storage repository for cryptocurrency) with an address ending in 1EKW.

Then, the SEC takes a leap, stating <u>not</u> that Bitcoin went from the 1EKW wallet to improper expenditures, but instead, that the 1EKW address is in a "cluster" of 27 other addresses, which the SEC lumps all together as the "Intermediary Addresses." The SEC intimates that Lacroix controls the Intermediary Addresses, but does not present evidence or squarely assert that he controls any or all of these addresses.

And then, the SEC travels further down this broken chain. The SEC asserts that <u>some</u> Bitcoin from <u>some</u> of these 27 addresses went to Account A (an account apparently in the

---

[1]   See, e.g., https://www.coindesk.com/price/ (accessed on July 11, 2018).

name of Dominic Lacroix, per the SEC's evidence) and Account B (an account that the SEC's evidence reflects is held <u>not</u> by Defendants, but by Pascal Lacroix, Tenreiro Decl. ¶ 19(b). Those transfers happened in August and September 2017, <u>before</u> this Court's asset freeze was entered. Tenreiro Decl. ¶ 31 (citing Ex. P (chart, Dkt. # 71-18)).

And then, further down the broken chain, <u>some</u> Bitcoin from the Intermediary Addresses went to Account B – Pascal Lacroix's account – out of which account payments were later made for a car lease. Tenreiro Decl. ¶ 31(a) (citing Ex. Q (chart, Dkt. # 71-19)). Finally, <u>some</u> Bitcoin went from the Intermediary Addresses (including the so-called 1F3Z Account) to Account B, and then <u>some</u> Bitcoin went from Account B went to the Tangerine Account, also in the name of Pascal Lacroix. Tenreiro Decl. ¶ 19(c), ¶ 31(b) (citing Ex. R (chart, Dkt. # 71-20)).

The SEC keeps traveling. It asserts that <u>some</u> Bitcoin was in a Kraken account allegedly belonging to Lacroix. Tenreiro Decl. ¶ 28. Was this the same Bitcoin that was raised in the PlexCoin sale? The evidence the SEC submits (a large spreadsheet from Ms. Wraga, the SEC analyst (Dkt. # 64)) lists the holdings in the Kraken account, but does not show that this Bitcoin came from the PlexCoin sale. So that fact, too, is unclear. Then, the SEC asserts that some of those Bitcoin went to Account B, then some Bitcoin went to the Tangerine Account – both accounts belonging to Pascal. Tenreiro Decl. ¶ 31(c) (citing Ex. P, row 11 and Wraga Decl. Ex. H., row 2250). And finally, <u>some</u> of the Kraken Bitcoin went to Account A (allegedly a Dominic Lacroix account), Tenreiro Decl. ¶ 31(c) (citing Ex. S (Dkt. # 71-21)), and some of that Bitcoin (along with some other Bitcoin from the Intermediary Addresses, the chain to which is unspecified) was used in five transactions that the SEC alleges violated the order.

That's a lot of broken links in the chain.

6

None of this evidence shows that money raised in the PlexCoin sale was used. Indeed, the SEC only traces 0.0001 Bitcoin (approximately 64 cents as of today, and approximately 32 cents at the time of purchase) that was related to PlexCoin at all. The SEC has not even proven that Lacroix misspent this small amount.

### B. The SEC's Evidence of PlexCoin Funds Is Not From Any Investor Funds, But From a Government Agent

The Court may be wondering: why was there a PlexCoin transaction for 32 cents? The SEC alleges that it was from a "PlexCoin ICO investor." Tenreiro Decl. ¶ 24 & Ex. N. But the extremely small amount of that purchase, combined with the fact that the SEC has all of the private wallet address information for that 0.0001 Bitcoin, strongly suggests that the "investor" was in fact a Canadian government agent (or an investigator working with the Canadian government) who was attempting to trace funds used to purchase PlexCoin.

The email from the so-called "investor" the SEC presents as evidence (Dkt. # 71-16) supports this notion. The name of the so-called "investor" is redacted. The email states that the "investor" "sent 0.0001 Bitcoins (0.32$) to the Bitcoin address that plexcoin provided me, for the pre-sale of Plexcoin."[2] He or she further says:

> The purpose of the transfer is to be able to find the address of their main wallet. […]
>
> I was able to obtain further proof of purchase transaction from plexcoins from another individual, but this is 1.5 BTC ($ 4,797.77). […]
>
> On the blockchain, the funds have not moved yet, but we will be able to know if they send their bitcoins on an exchange (Coinbase etc or other) […]
>
> Since they're going to need liquidity in fiat, I presume they'll sell some of the bitcoins, or ETH on an exchange. In my opinion, it will be possible to know which exchange, and even the total amount of bitcoins in their core portfolio during the movement of funds.

---

[2] All translations are unofficial, provided for ease; the SEC did not provide a translation of its exhibit.

7

Tenreiro Decl. Ex. N (Dkt. # 71-16). Clearly, this is no ordinary investor, but an agent of the Canadian government, working to try to trace PlexCoin funds. Even with this inside information, the SEC still has not shown that PlexCoin money was used improperly, and the SEC has not shown that <u>any</u> funds from any actual investors were moved at all.

**II.     AT MOST, THE SEC HAS SHOWN THAT CORPORATE ENTITIES ASSOCIATED WITH LACROIX AND LACROIX'S BROTHER SPENT FUNDS**

The SEC's evidence shows, at most, that (1) payments were made out of a Tangerine Account (account number ending in 5593) registered to Pascal Lacroix, and (2) Interaxe Inc. and Gestio Inc., non-defendant entities allegedly affiliated with Dominic Lacroix, paid for a lease for a car. Tenreiro Decl. Ex. H (Dkt. # 71-10).

First, the Tangerine Account is registered to Pascal, who is Dominic Lacroix's brother, and who apparently has been paying certain expenses on Dominic's behalf. The SEC has alleged that Dominic Lacroix controls this account, and asserts that Lacroix is "deceitfully arranging his finances to make it seem that his brother is paying for his expenses."

But the SEC's own evidence – including sworn testimony from Tangerine Bank itself – undermines that conclusion. John Evans, an Investigator with Corporate Security for Tangerine submitted an affidavit stating that "<u>Pascal Lacroix</u> enrolled to open a Tangerine account," using a Quebec Driver's License as proof of ID. Tenreiro Decl. Ex. V (Dkt. # 71-24) (emphasis added). When asked directly, Mr. Evans stated explicitly that "Pascal Lacroix is only authorized person for Account Number …5593." Tenreiro Decl. Ex. W (Dkt. # 71-25). In short, while the SEC accuses Dominic Lacroix of deceit, the evidence from disinterested third parties does not show that Dominic controls that account; it merely shows that a family member is helping Dominic Lacroix in his time of need.

8

Second, the evidence does reflect that companies associated with Lacroix paid for a car lease. At most, the SEC has shown that other entities – non-defendants here, who are not subject to the Court's order – made expenditures on Lacroix's behalf. The SEC has not shown by clear and convincing evidence that Lacroix <u>personally</u> did so, and has not presented information sufficient to disregard the corporate formalities, which requires more than just an assertion. That said, this issue already has been litigated extensively in Canada, and the Canadian court's conclusions are set forth in Tenreiro Decl. Ex. Z (Dkt. # 71-28).

### III. THE SEC'S MOTION UNDERLINES THAT THIS CASE BELONGS IN CANADA

The SEC's new motion underlines the merits of the Defendants' jurisdictional motion pending before the Court. In particular (and in brief, given that the jurisdictional motion is already fully submitted), a Constitutional due process analysis requires courts to analyze whether it is reasonable to exercise jurisdiction here, rather than in an alternate locale. Some of the factors in evaluating reasonableness include (i) the burden on the defendant, (ii) the efficient resolution of the controversy, (iii) whether there is a prior action pending, and (iv) whether proceedings here would conflict with proceedings in the other forum. *See Asahi Metal Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 83 (2d Cir. 1993) (discussing factors); *Ole Media Mgmt., L.P. v. EMI April Music, Inc.*, No. 12-cv-7249 (PAE), 2013 U.S. Dist. LEXIS 82073, at *6-7 (S.D.N.Y. June 11, 2013) (prior action pending doctrine); *In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1047-50 (2d Cir. 1996) (addressing comity in avoiding a conflict between proceedings).

The SEC's motion amply demonstrates these factors. <u>First</u>, as mentioned above, the SEC's contempt motion is an echo of a motion filed in Canadian court by the AMF – same

9

allegations, same evidence. Defendants have already had to fight this battle in Canada. The burden on Defendants in defending in two places is tremendous: Lacroix, having had his assets frozen, is now facing a contempt motion for receiving financial assistance from others, and yet is expected to fight the same battles twice, against governmental agencies with vastly superior resources.

Second, this motion is the polar opposite of efficiency. This motion was just litigated in Canada in its entirety, in the investigative and court actions that were pending prior to the SEC's involvement. It is extremely inefficient to do it all over again. And it's perfectly reasonable to expect that this pattern will continue throughout the life of this case.

Third and finally, the conflict between the two proceedings is evident and manifest. The order in Canada for Defendants to put a significant portion of the cryptocurrency at issue into court receivership in Canada may well have violated this Court's order. (Defendants had no choice in the matter.) If this Court ordered the relief the SEC sought, it would conflict with prior orders of the Canadian court. Further, given the amounts now under court receivership in Canada, if the SEC were granted all the relief it sought in its Complaint, such an order would again intrude on the Canadian court proceedings.

The SEC is cooperating with the AMF to put maximum pressure on the Defendants, trapping them between two court proceedings, and heightening the pressure even further by cutting off their avenues of family support, forcing them to spend money they cannot spend. Such abuse by a government agency is Constitutionally infirm. There is no reason whatsoever that the SEC needs to maintain this action independently, given that it can obtain virtually all the relief it seeks simply through cooperation with the AMF if this process were to go forward in Canada, where it belongs.

## **CONCLUSION**

The Court should deny the SEC's application in its entirety. Under Local Civil Rule 83.6(b), to the extent this Court is considering any finding of criminal contempt, Dominic Lacroix hereby requests a trial by jury on any such issue.

Dated: New York, New York
July 13, 2018

                        MORRISON COHEN LLP

                        By:    /s/ Jason P. Gottlieb
                              Jason P. Gottlieb
                              909 Third Avenue
                              New York, New York 10022
                              (212) 735-8600
                              *Attorneys for Defendants Sidepay Ltd.,*
                              *Dominic Lacroix, and Sabrina Paradis-Royer*