

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

JORGE G. TENREIRO
TELEPHONE: (212) 336-9145
EMAIL: TENREIROJ@SEC.GOV

August 12, 2019

**Via ECF and UPS Overnight**

Hon. Carol Bagley Amon
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  SEC v. PlexCorps a/k/a and d/b/a PlexCoin and Sidepay.ca, et al.;
     No. 17 Civ. 7007 (CBA)

Dear Judge Amon:

The parties in the above-captioned case have reached a settlement.  Enclosed herewith are signed consents of Defendants Dominique Lacroix ("Lacroix"), Sabrina Paradis-Royer ("Paradis-Royer," together with Lacroix, the "Individual Defendants"), and PlexCorps a/k/a and d/b/a PlexCoin and Sidepay.ca ("PlexCorps," collectively "Defendants), and a proposed final judgment against Defendants.  Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this letter to provide the legal and factual basis for the Court to conclude that the proposed final judgment is fair and reasonable and in the public interest, in light of *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014).

As set forth below, this settlement is fair and reasonable in light of, among other things, Defendants' consent not to oppose the distribution to victim-investors in the PlexCoin Initial Coin Offering ("ICO") of certain funds frozen in the United States and Canada that are tied to the PlexCoin ICO.  It is also fair and reasonable given the pervasive nature of Defendants' fraud, the likelihood of future violations of the securities laws by Defendants, the amount Defendants profited from the fraud, and Defendants' willingness to settle the matter.  Accordingly, the SEC respectfully requests that the Court enter the proposed final judgment together with the consents.

I.    **Background**

On December 1, 2017, the SEC filed an emergency action, and obtained temporary restraining orders, to stop Defendants' dissemination of a series of material false and misleading statements, and misappropriation of investor assets, in connection with the illegal offering through the ICO for unregistered securities known as PlexCoins.  *See* Complaint, dated Dec. 1, 2017 (D.E. 1-2) ("Compl.") ¶¶ 1-2, 5-6, 17-19, 93-124.  The SEC charged Lacroix and PlexCorps with raising approximately $15 million through the unregistered sale of PlexCoins. The SEC also charged Lacroix and PlexCorps with falsely telling investors, among other things, that they were keeping the identity of the individuals behind PlexCorps secret to avoid poaching, and that investors could expect "enormous" and "real" returns from investing in PlexCoin of

Hon. Carol Bagley Amon                                    August 12, 2019
Page 2

upwards of 1,300%. *Id.* ¶¶ 82-87. The SEC also alleged that Paradis-Royer participated in the scheme to defraud PlexCoin investors while aiding and abetting Lacroix's and PlexCorps' violations. *Id*. ¶¶ 15, 148. The SEC later filed an amended complaint further alleging that Lacroix and PlexCorps had lied about the amounts raised during the PlexCoin ICO, which was approximately $8.3 million, and not the $13 million Defendants had alleged. *See* Amended Complaint, dated Feb. 25, 2019 (D.E. 107) ("Am. Compl.") ¶ 14. The amended complaint further alleged that Defendants had misappropriated at least $600,000 of investor proceeds for lavish personal expenses. *Id.* ¶ 15.

The SEC alleges that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and that Lacroix and PlexCorps violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77(e)(c)]. The SEC sought temporary and preliminary relief, as well as permanent injunctions against Defendants, disgorgement of ill-gotten gains and prejudgment interest, civil penalties, an order barring Lacroix from serving as an officer or director of a public company, and orders barring the Individual Defendants from participating in any offering of digital securities. Compl. ¶ 19; Am. Compl. ¶ 23. On December 1, 2017, the Court granted the SEC temporary relief, including orders freezing Defendants' assets and, in particular, certain assets held at U.S.-based payment service providers Stripe, Square, and Kraken (operating as Payward, Inc.) (the "U.S. Frozen Assets"). *See* Order, dated Dec. 1, 2017 (D.E. 10) ¶ VIII.

Without admitting or denying the allegations in the SEC's pleadings, Defendants have agreed to settle the claims against them by consenting to a final judgment that would:

(1) permanently enjoin them from future violations of Section 10(b) of the Exchange Act and Rule 10b-5, and Section 17(a) of the Securities Act, and permanently enjoin Lacroix and PlexCorps from future violations of Sections 5(a) and 5(c) of the Securities Act;

(2) order that Defendants pay disgorgement and prejudgment interest in the amount of $4,563,468.62 and $348,145.25;

(3) order that the Individual Defendants pay civil penalties of $1 million, each;

(4) order that Lacroix be permanently barred from acting as an officer or director of a public company;

(5) order that the Individual Defendants be barred from participating in any offering of digital securities;

(6) pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, create a Fair Fund so that collected civil penalties can be combined with collected disgorgement and prejudgment interest for distribution to victims (the "PlexCorps Fair Fund");

Hon. Carol Bagley Amon                                        August 12, 2019
Page 3

(7) orders that asset custodians transfer the U.S. Frozen Assets to the Commission for distribution to investors; and

(8) orders that Defendants not oppose any action by the SEC to enforce or collect upon the final judgment against any assets belonging to Defendants, including assets frozen by orders of Canadian tribunals with respect to this matter.

## II.  The Proposed Settlements Are Fair and Reasonable and in the Public Interest

"[T]he proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the public interest would not be disserved . . . in the event that the consent decree includes injunctive relief."  *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (internal quotation marks and citations omitted).  The terms of the proposed judgment meet this standard.

### 1.  Establishment of Fair Fund, Turnover of U.S. Frozen Assets, and Order that Defendants Cooperate in Collection Efforts

The centerpiece of the proposed final judgments are three orders that, together, would begin the process of permitting the distribution of certain funds obtained from PlexCoin ICO victims.  These orders are the order establishing the PlexCorps Fair Fund, the order directing the turnover of the U.S. Frozen Assets to the SEC, and the order that Defendants cooperate in collection actions against certain frozen assets, including in Canada.

Specifically, in the case entitled, AUTORITÉS DES MARCHÉS FINANCIERS v. DOMINIC LACROIX, et al., No.: 200-11-025040-182, filed in the Superior Court in Quebec, Canada, a Quebec tribunal appointed a receiver (the "Receiver"), and ordered Defendants to turn over approximately $4 million worth of Bitcoins obtained, directly or indirectly, from PlexCoin ICO victims.  With the cooperation of the Quebec Autorite des Marches Financiers ("QAMF"), the SEC identified certain other PlexCoin ICO victim assets, including the U.S. Frozen Assets. By relinquishing their rights to these combined assets, Defendants are clearing the way to seek orders from the Quebec tribunals permitting the distribution of assets.  The expectation is that the assets frozen in Canada and the U.S. Frozen Assets will be combined—with the consent of both courts having jurisdiction over the assets—so that a single, cost-effective distribution may be made to harmed investors under a plan to be proposed by the Receiver or another potential distribution agent.  Because the goal of these orders is to return to victims as much of the remaining proceeds as possible, they are in the public interest and fair and reasonable.

### 2.  Injunction Against Future Violations

Permanently enjoining Defendants from committing future violations of the relevant anti-fraud provisions is fair, reasonable, and in the public interest.  Courts typically consider the following factors in determining whether to impose an injunction: "(1) the egregiousness of the

Hon. Carol Bagley Amon                                       August 12, 2019
Page 4

underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Bankosky*, 716 F.3d 45, 48 (2d Cir. 2013) (citation omitted).  It is not "necessary to apply all these factors in every case," *id.*, and "past illegal conduct is highly suggestive of the likelihood of future violations."  *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975).

Defendants' misconduct was recurrent as it involved multiple materially false statements and deceptive acts, including misappropriation of assets, Am. Compl. ¶¶ 107-159, spanning several months.  *Id.*  Defendants' misconduct also involved a high degree of scienter because, for example, Lacroix lied about his involvement with the PlexCoin ICO because he was a securities law recidivist, and the Individual Defendants committed their violations despite being under orders of courts in Quebec not to engage in the PlexCoin ICO.  *Id.* ¶¶ 44-48, 68-74; *see also* Reply Br., dated Nov. 2, 2018 (D.E. 98-1), at 7 (detailing evidence in record of high degree of Defendants' scienter).  Moreover, Lacroix's scienter is attributable to PlexCorps given his control of the unincorporated entity.  *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972).  Accordingly, permanent injunctions are fair and reasonable.

Moreover, permanent injunctions are in the public interest.  "The job of determining whether the proposed S.E.C. consent decree best serves the public interest . . . rests squarely with the S.E.C., and its decision merits significant deference."  *Citigroup Glob. Mkts.*, 752 F.3d at 296.  Here, Defendants should be enjoined from committing securities fraud to protect the investing public for many of the same reasons the injunctions are fair and reasonable— Defendants' past egregious misconduct makes it likely that, unless enjoined, they could violate the law again in the future.

### 3.   Ordering Defendants to Pay Disgorgement and Prejudgment Interest

Courts may order disgorgement of ill-gotten gains and prejudgment interest thereon. Disgorgement prevents violators from being unjustly enriched and deters others from violating the securities laws.  *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997).  Where a defendant's fraud is pervasive, courts will order disgorgement of all proceeds generated during the course of a scheme.  *See CFTC v. British Am. Commodity Options Corp.*, 788 F.2d 92, 93-94 (2d Cir. 1986); *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 428 (S.D.N.Y. 2007) ("[I]t is proper to assume that all profits gained while defendants were in violation of the law constituted ill-gotten gains.") (quotation omitted).  Defendants' offer to pay disgorgement of $4,563,468.62 and prejudgment interest of $348,145.25, for a total of $4,911,613.87, is fair and reasonable and in the public interest.

Working with experts, the SEC has determined that Defendants raised the equivalent of approximately $8,269,218 in the PlexCoin ICO:  $3,732,118 in credit-card transactions and $4,537,100 in digital-asset transfers.  In a litigated context, the SEC may seek full proceeds from the fraudulent ICO.  Moreover, in this case, a significant portion of the funds raised by Defendants were in the form of the digital assets, which Defendants cashed in for their personal

Hon. Carol Bagley Amon                                        August 12, 2019
Page 5

use in exchange for fiat currencies or other digital assets, resulting in significant additional gains
to Defendants.  In a settled context and taking into account both the size of the fraud, the amount
of frozen proceeds in Canada and the U.S. Frozen Assets, and Defendants' willingness to settle,
an order of disgorgement for a sizable portion of funds raised is proper.  Defendants have agreed
to disgorge a total of $4,563,468.62, roughly 55% of the total amount raised.  The SEC believes
that this amount is a fair approximation of defendants' ill-gotten gain in a settled context.

Moreover, because Lacroix served as the principal of PlexCorps, oversaw the misconduct
at issue, and was essentially PlexCorps' alter ego, while Paradis-Royer set up certain payment
processor accounts to collect PlexCoin ICO funds and directed funds to certain bank accounts
registered in her name, which were then spent for her and Lacroix's benefit, joint and several
liability is appropriate.  *See SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996)
(finding joint and several liability appropriate when two or more individuals or entities
collaborate or have close relationships in the illegal conduct).  A prejudgment interest order is
also fair and reasonable.  "Requiring payment of [prejudgment] interest prevents a defendant
from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal
activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).  Here, the SEC calculated the
prejudgment interest amount in a fair and reasonable manner, by using the prevailing IRS
interest rate for tax underpayment to Defendants' illicit proceeds from the date of the last
charged violation (or approximately October 1, 2017) through the time when Defendants
consented to the settlement (or approximately May 1, 2019).  *See First Jersey Sec., Inc.*, 101
F.3d at 1476 (finding the IRS underpayment rate appropriate to calculate prejudgment interest).

### 4.  Ordering The Individual Defendants to Pay a Civil Penalty

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act,
respectively, authorize the imposition of civil penalties for violations of those Acts.  Third-tier
penalties are appropriate when a defendant's violations involved fraud or deceit and resulted in
substantial loss to others or created a significant risk of substantial loss to others, as occurred
here.  In weighing the penalty amount to impose, courts consider: (1) the egregiousness of the
conduct; (2) the degree of scienter; (3) whether the defendant's conduct created substantial losses
or the risk of substantial losses; (4) whether the defendant's conduct was isolated or recurrent;
and (5) whether the penalty should be reduced due to the defendant's demonstrated current and
future financial condition.  *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007).

The Individual Defendants' conduct warrants significant civil penalties for much of the
same reasons that their conduct warrants injunctions.  Lacroix made many brazenly false
statements to investors in the marketing materials for the PlexCoin ICO, and then, with Paradis-
Royer, conducted a scheme to defraud investors over the course of the PlexCoin ICO by
misappropriating substantial amounts of investor funds, conduct which continued even after the
Court issued its injunctions and asset freezes against Defendants.  *See* Br. in Supp. of Mot. for
Contempt, dated June 13, 2018 (D.E. 71) at 5-7 (detailing Lacroix's disregard of freeze orders).
In light of the brazen scheme conducted by the Individual Defendants, such substantial penalties
of $1,000,000 are warranted.  *See, e.g., SEC v. Illarramendi*, 260 F. Supp. 3d 166, 184-85 (D.

Hon. Carol Bagley Amon                                                August 12, 2019
Page 6

Conn. 2017) ($1 million penalty); *SEC v. Nadel*, No. 11 Civ. 0215 (WFK), 2016 WL 639063, at
*26-27 (E.D.N.Y. Feb. 11, 2016) ($1 million penalty); *Universal Express, Inc.*, 646 F. Supp. 2d
at 564  ($1 million penalty).

> **5.  Barring Lacroix from Serving as an Officer or Director of a Public Company
>     and the Individual Defendants from Participating in the Offering of Digital
>     Securities**

A district court has substantial authority to impose an officer and director bar either under
Section 21(d)(2) of the Exchange Act or in the exercise of its broad equitable powers.  15 U.S.C.
§ 78u(d)(2); *see also Bankosky*, 716 F.3d at 48; *SEC v. Schiffer*, No. 97 Civ. 5853, 1998 WL 226101,
at *3 (S.D.N.Y. May 5, 1998).  The key inquiry is whether a violator's conduct demonstrates
unfitness to serve as an officer or director.   The Second Circuit considers six factors in determining
whether an officer-and-director bar is appropriate: "(1) the egregiousness of the underlying securities
law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he
engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the
violation; and (6) the likelihood that misconduct will recur." *Bankosky*, 716 F.3d at 48 (quoting *SEC
v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).  Similarly, Section 21(d)(5) of the Exchange Act
authorizes the Commission to seek "any equitable relief that may be appropriate or necessary for
the benefit of investors."

An order barring Lacroix from serving as an officer of director of a public company, and
a conduct-based injunction against the Individual Defendants, are appropriate here because of the
egregiousness of their misconduct.  By enjoining the Individual Defendants from engaging in
any offering of digital securities, the proposed conduct-based injunction would be narrowly
tailored to address the circumstances of the underlying misconduct.  Such relief is further
appropriate here given Lacroix's recidivist history, Lacroix's and Paradis-Royer's flagrant
disregard of QAMF actions, and the ease with which anyone can engage in offerings of digital
securities on the Internet.  The SEC has obtained similar relief on consent in another action
involving a fraudulent and unregistered ICO.  *See SEC v. REcoin Group Foundation, LLC*, Civ.
No. 1:17-cv-05725 (E.D.N.Y. filed Sept. 29, 2017).

For the foregoing reasons, the proposed settlement is fair and reasonable and will serve
the public interest.  The SEC respectfully requests that the Court approve and enter the proposed
consent judgment.

Respectfully submitted,

Jorge G. Tenreiro

cc (via ECF):  Jason Gottlieb, Esq.